

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN

~~XXXXXXXXXXXXXXXXXX~~X
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Linton S. Savage
County Attorney
Nueces County
Corpus Christi, Texas

Dear Sir:

Opinion No. 0-2476
Re: Can the voters in the general primary election write in the name of a person that they desire to vote for and elect a person who has not had his name placed on the ballot as required by law?

Your recent request for an opinion of this Department on the above stated question has been received.

We quote from your letter as follows:

"The Secretary of the Democratic Executive Committee of Nueces County, Texas, has asked me to obtain a ruling from your Department in regard to writing in names on the ballots at the general primary election.

"In a race for one of the Justices of the Peace in this County, one candidate failed to file his request to have his name placed on the ballot for the coming primary election as required by Article 3113 of the Revised Civil Statutes of Texas. The other candidate filed his request as required by law. The one who did not file is contemplating a write-in campaign.

"The Secretary wants the following question propounded: 'Can the voters in the general primary election write in the name of a person that they desire to vote for and

elect a person who has not had his name placed
on the ballot as required by law?'"

Article 3109, Vernon's Annotated Civil Statutes,
reads as follows:

"The vote at all general primaries shall
be by official ballot, which shall have printed
at the head the name of the party, and under
such head the names of all candidates, those
for each nomination being arranged in the
order determined by the various committees
as herein provided for, beneath the title
of the office for which the nomination is
sought. The voter shall erase or mark out
all names he does not wish to vote for. The
official ballot shall be printed in black
ink upon white paper, and beneath the name
of each candidate thereof for State and dis-
trict offices, there shall be printed the
county of his residence. The official bal-
lot shall be printed by the county committee
in each county, which shall furnish to the
presiding officer of the general primary for
each voting precinct at least one and one-
half times as many of such official ballots
as there are poll taxes paid for such pre-
cinct, as shown by the tax collector's list.
Where two or more candidates are to be nomi-
nated for the same office, to be voted for
by the qualified voters of the same district,
county or justice precinct, such candidates
shall be voted for and nominations made sepa-
rately, and all nominations shall be separate-
ly designated on the official ballots by num-
bering the same, '1', '2', '3' etc., print-
ing the word 'No.', and the designating num-
ber after the title of the office for which
such nominations are to be made. Each can-
didate for such nomination shall designate
in the announcement of his candidacy, and
in his request to have his name placed on
the official ballot, the number of the nomi-
nation for which he desires to become a can-
didate, and the names of all candidates so
requesting shall have their names printed
beneath the title of the office and the num-
ber so designated. Each voter shall vote

for only one candidate for each such nomination."

We believe the opinion of the court in the case of Dunagan vs. Jones, 76 S. W. (2d) 219, definitely answers your inquiry.

Mrs. Roy H. Dunagan was the contestee in the above mentioned case and her husband, Roy H. Dunagan, prior to his death on July 15, 1934, had been an active candidate for nomination for the office of County Commissioner of Precinct No. 2 of Lamar County and soon after his death Mrs. Dunagan was solicited by numerous friends to make the race as a candidate for said office in the coming election by having her friends write her name in the official ballot used in the election. She consulted the County Attorney of Lamar County and he wrote the Attorney General of the State requesting his opinion as to whether Mrs. Dunagan could become a candidate in the election, and if votes voted for her by voters writing her name on the official ballot for said election would be valid and counted for her. The Attorney General advised that the votes would be legal and could be counted. On receipt of this advice, Mrs. Dunagan began and thereafter waged an active campaign for nomination in the election for the office of County Commissioner. Mrs. Dunagan did not comply with any of the provisions of the primary election law required of candidates in said primary election law to enable them to have their names printed on the official ballot as candidates and did not pay any portion of the expenses of holding the election.

We quote from the above mentioned case as follows:

"Ordinarily, express provision is made by statute as to the form, requisites, preparation, and furnishing of ballots by means of which the voter may record his choice. And in this state there is such statutory provision as to general primary elections. The requirement, besides others, is that the name of all candidates shall be printed beneath the office for which nomination is sought. Article 3109, R. S. Any candidate for county office is expressly given the right to have his name appear printed on

the official ballot of the primary election upon written request signed and acknowledged and filed with the county chairman not later than Saturday before the third Monday in June preceding such election. Article 3113. And further, as a condition precedent, the county candidate must pay to the executive committee the amount of the estimated expenses of holding the primary apportioned to him. Article 3116, R. S. Since statutory provisions as to the preparation of the ballot and as to the printed names to appear thereon, must be strictly followed (20 C. J. § 164, p. 141), the right of a candidate to have his name printed on the official ballot would not be evident in case of failure to timely fulfill the requirements of the statute, and his application for mandamus would probably be denied by the court. In such case of default in the compliance of the fair and reasonable restrictions, the candidate would not have the right as personal to him of legal relief in the courts to compel the printing of his name on the official ballot. But the purely personal rights of the candidate in the respect mentioned is quite apart and distinct from and does not measure the right of the voter to indicate his choice of a person for the nomination of a particular office. There is a well recognized difference between the rights and duties of candidates in having their names printed on the official ballot, and the legal right of the voters in choosing their nominees on the day of the general primary election. The legal effect is not necessarily attaching of invalidity of the ballot as to that particular office and rendering his vote not subject to be counted, of a qualified voter writing the name of a person on the ballot under a particular office. In the light of the history of the adoption generally of the method of official ballot, the present legislative provisions as to the requirement of the use of the official ballot in the primary election may be regarded as adopted rather for the benefit of the voter, and as a safeguard to the purity of elections, than for the personal benefit only of the candidate.

"The decision of the question varies, according to the phraseology of the statutes, of whether a voter may vote for a person whose name is not printed on the official ballot by writing his name under the particular office. While the primary law of this state does not contain direct authority to vote by writing a name on the official ballot, yet the primary law does not forbid the making of nominations in that manner. The statute simply provides that 'the vote at all general primaries shall be by official ballot,' and that 'the voter shall erase or mark out all names he does not wish to vote for'. Article 3109, R. S. There is no provision that county candidates must be chosen by the voters only from those names that are printed on the official ballot. It is, therefore, believed that the statute should be so construed as to leave the voter with free choice upon his own volition to erase or mark out all printed names and write in the name of a person not on the ballot under the particular office. The fundamental principle of the direct primary is to have expression of the popular will by voting for the persons freely chosen by them as nominees for the particular offices. The voice of the people becomes of legal force when expressed at the time and under the conditions which have been prescribed and pointed out for them by statute, or as allowed by existing law. There appearing no legal reason why at the election any voter who chose to do so should not vote for the contestee, there is no escape from the conclusion that the contestant was not at all events nominated for the particular office. If he was not elected, he cannot have the contestee ousted from the certified nomination in this proceeding.

"The question decided is one of first impression in this state, and authorities of other cases are not here cited as being without application."

In view of the foregoing case you are respectfully advised that it is the opinion of this Department

that the qualified voters in the general primary election can write in the name of any person for whom they desire to vote and mark out all printed names under the particular office in the general primary election; and that the votes would be legal and could be counted, and of course, if the person whose name was written, in or on the ballot, received a sufficient number of votes as required by law, such person would be nominated.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  /s/ Ardell Williams
Ardell Williams
Assistant

AW:BBB:LM

APPROVED JUN 29, 1940

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE

BY  BWB
CHAIRMAN